UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AmTrust Financial Services, Inc.,<br><br>        Plaintiff,<br><br>    -v-<br><br>Forge Underwriting Limited,<br><br>        Defendant. | 25-cv-10170 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

This is an insurance coverage dispute in which plaintiff AmTrust Financial Services, Inc. seeks to recover defense costs and settlement payments under an excess directors and officers run-off policy issued by defendant Forge Underwriting Limited. Forge has timely moved to dismiss the Complaint with prejudice. ECF No. 17. After receiving full briefing from the parties, the Court heard oral argument on March 9, 2026. For the reasons set forth below, the Court now denies the motion to dismiss.

I.    Background

The following allegations are drawn from the Complaint and the exhibits incorporated therein. AmTrust seeks coverage from Forge for defense costs and settlement amounts incurred in connection with an earlier securities class action, Martinek v. AmTrust Financial Services, Inc., 2020 WL 4735189 (S.D.N.Y. Aug. 14, 2020) (the "Martinek Action"). Compl. ¶ 1. AmTrust has two insurance policies issued by Forge that are relevant here: a

1

primary directors and officers liability policy that provides $5 million of coverage above a $5 million self-insured retention, id. ¶ 26, and an Excess Run-Off Policy in connection with which Forge is responsible for up to $3,208,500. Id. ¶ 41. New York law governs all disputes related to the Excess Run-Off policy. Compl., Ex. 1 at 3, 9.

**The Subsequent Acts Exclusion**. Endorsement No. 16 of the Primary Policy — incorporated by reference into the Excess Run-Off Policy — contains the following provision (the "Subsequent Acts Exclusion"):

> No coverage will be available under this Policy for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any a Wrongful Act committed or allegedly committed on or after November 29, 2018 or with respect to any Interview or Investigation demand in connection with any act, fact, circumstance, transaction, or event taking place on or after November 29, 2018.

Compl., Ex. 10 at 31. The Primary Policy defines "Wrongful Act" as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by an Insured Person while acting in his or her capacity as such or due to his or her status as such," or, solely with respect to entity coverage, "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by the Company." Compl., Ex. 10 at 37.

2

**The Martinek Action**. Between 2013 and 2016, AmTrust issued six series of publicly listed preferred stock. Compl. ¶ 42. Beginning in January 2018, as AmTrust's controlling stockholder group began pursuing a transaction to take the company private, AmTrust and its executives publicly stated that the preferred stock would remain outstanding and listed on the NYSE following the transaction. Id. ¶¶ 43-46. The take-private transaction closed on November 29, 2018. Compl. ¶ 46.

Approximately two months later, on January 18, 2019, AmTrust issued a press release announcing that it would delist all six series of preferred stock. Compl. ¶ 47. The delisting became effective on February 7, 2019. Martinek v. AmTrust Fin. Servs., Inc., 2020 WL 4735189, at *6 (S.D.N.Y. Aug. 14, 2020).

On August 30, 2019, the Martinek Action was filed on behalf of a class of preferred stockholders who purchased shares during the period January 22, 2018 to January 18, 2019. Compl. ¶ 48. The Martinek plaintiffs alleged two causes of action: (1) violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 for misrepresentations and omissions concerning the continued listing of the preferred shares, and (2) violation of Section 20(a) of the Exchange Act against the individual defendants as controlling persons. Compl., Ex. 9. The plaintiffs alleged that they were "injured because the risks that materialized were risks of which they were unaware as a result of [] misrepresentations, omissions,

3

and other fraudulent conduct" by AmTrust. Compl., Ex. 9 ¶¶ 105, 109. They further described the January 2019 delisting announcement as "the public disclosure of true facts" -- i.e., a corrective disclosure, not a wrongful act. Id. ¶ 110.

Judge Failla denied AmTrust's motion to dismiss the Martinek Action, finding that AmTrust's statements that it "will" maintain the NYSE listings were actionable because "the very fact that Defendants decided to delist the preferred shares barely two months after the Merger closed -- on bases that were known to Defendants at the time they represented that they 'will' maintain the listings -- strongly suggests that Defendants knew this statement to be false when made." Martinek, 2020 WL 4735189, at *12. The case ultimately settled.

On January 11, 2022, AmTrust asked Forge to confirm coverage for the Martinek Action. Compl. ¶¶ 49-51. Forge denied coverage on February 10, 2022. Compl. ¶ 52. After extended litigation in Delaware, this action followed. AmTrust seeks recovery of at least $2,366,198.41 that it incurred in connection with the Martinek Action. Compl. ¶ 61.

II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded factual

4

allegations as true and draws all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

New York law imposes a heavy burden on the insurer seeking to exclude coverage. "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006). Any ambiguity in policy language "must be resolved in favor of the insured and against the insurer." Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co., 788 N.Y.S.2d 142, 144 (N.Y. App. Div. 2004); see also Seaboard Sur. Co. v. Gillette Co., 486 N.Y.S.2d 873, 876 (1984) (exclusions "are not to be extended by interpretation or implication but are to be accorded a strict and narrow construction").

### III. Discussion

Since it was the delisting of AmTrust's preferred stock that led to the filing of the Martinek Action, Forge argues that this was the "Wrongful Act" that led to AmTrust's incurring its payments and expenses in the Martinek Action and that, since the delisting occurred after November 28, 2018, it fell within the Subsequent Acts Exclusion. AmTrust says no, because the delisting itself was

a lawful act, and the wrongful conduct alleged in the Martinek Action consisted entirely of the knowing misrepresentations AmTrust made before November 29, 2018.

The threshold problem with Forge's argument is that it never establishes that the January 2019 announcement or the February 2019 delisting constituted a "Wrongful Act" as that term is defined in the policy. The definition encompasses "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty." Compl., Ex. 10 at 37. Forge simply assumes that the delisting qualifies, but neither the Martinek plaintiffs nor any court in that litigation characterized the delisting itself as wrongful conduct.

As a matter of a plain text, "Wrongful Act" and the listed examples suggest exactly that: an action that was unlawful. But the delisting was not unlawful. To the contrary, the Martinek plaintiffs expressly described the January 2019 delisting announcement as "the public disclosure of true facts." Compl., Ex. 9 ¶ 110. And Judge Failla's August 2020 decision, in sustaining the complaint, grounded its analysis in AmTrust's pre-transaction representations, finding that AmTrust's public statements that it "will" maintain the NYSE listings were actionable because AmTrust "knew [those] statement[s] to be false when made." Martinek, 2020 WL 4735189, at *12.

The Commercial Division's recent decision in a parallel case further supports this reading of "Wrongful Act." In Matlick v. AmTrust Financial Services, Inc., 2020 WL 1294669 (Sup. Ct. N.Y. Cty. Mar. 16, 2020), the court held that "AmTrust had no duty to inform investors of the fact that it could one day voluntarily delist its Securities" because such ability "is publicly set forth by statute, in regulations, and in the NYSE rules." Id. at *15-16. A lawful corporate act that a company has a right to take cannot constitute a "Wrongful Act" under the Policy.

Forge's reliance on the broad lead-in language of the Subsequent Acts Exclusion ("based upon, arising out of, . . . in any way involving") does not cure this foundational defect. That language amplifies the reach of the exclusion once a Wrongful Act after the cut-off date is established, but it does not substitute for one. In Zunenshine v. Executive Risk Indemnity, Inc., 182 F.3d 902 (2d Cir. 1999), and Pereira v. National Union Fire Ins. Co. of Pittsburgh, Pa., 525 F. Supp. 2d 370 (S.D.N.Y. 2007), broad lead-in language in exclusions similar to this one was found unambiguous, but in both cases the excluded conduct was itself wrongful. Here, by contrast, the predicate for triggering the lead-in language is absent because Forge has not shown that the delisting was a Wrongful Act. Accordingly, the exclusion never activates, regardless of how broadly the lead-in language is read.

Forge's reliance on Xerox Corp. v. Travelers Cas. & Sur. Co. of Am., 225 A.D.3d 510 (1st Dep't 2024), and WDF Inc. v. Zurich American Ins. Co, 2020 WL 5801072 (N.Y. Sup. Ct. Sept. 29, 2020) similarly misses the mark. Forge relies on those cases for the proposition that a subsequent acts exclusion bars coverage even when an underlying claim involves conduct occurring both before and after the cut-off date. These cases are materially distinguishable because in each of them, the court found that actual wrongful acts, as opposed to lawful corporate acts, occurred after the relevant cut-off date.

In Xerox, the First Department applied the exclusion because "the primary acts that gave rise to liability" were the negotiation and approval of an allegedly disadvantageous transaction and the decision not to extend the period for board nominations, all of which occurred after the cut-off date. 225 A.D.3d at 513. In WDF, the court held that coverage was barred because at least some of the "false filings" constituting the wrongful conduct took place after July 1, 2011. 2020 WL 5801072, at *11. Both cases involved conduct that independently qualified as "wrongful acts" after the exclusion's cut-off date. That is not the case here, where the only post-cutoff event is a delisting that the Martinek plaintiffs themselves characterized as a corrective disclosure.

Even assuming, arguendo, the Court determined that whether "Wrongful Act" encompassed the delisting announcement or event was

8

ambiguous, that, at most, would raise a dispute not resolvable on a motion to dismiss, and thus Forge's motion to dismiss would still have to be denied. Moreover, that ambiguity would likely cut against Forge. In the insurance context, exclusions must be stated in clear and unambiguous language, with no other reasonable interpretation available. See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (noting that insurers carry a "heavy" burden in demonstrating that an exclusion applies). Here, at the very least, there are two reasonable, alternative interpretations of "Wrongful Act," so Forge's motion to dismiss must be denied.

IV.  Conclusion

Accordingly, the Court hereby denies Forge's motion to dismiss. The Clerk of Court is respectfully directed to close ECF No. 17.

SO ORDERED.

New York, NY
March 13, 2026

_____
JED S. RAKOFF, U.S.D.J.